IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

Hotel Coamo Springs, Corp

Bankrupt

CASE NO. 75-00253 (ESL)

CHAPTER VII

Edgardo Muñoz, Trustee for
Hotel Coamo Springs, Corp.

PLAINTIFF

ADVERSARY PROCEEDING NO. 06-00210

v.

Terestela González-Denton,
Executive Director,
The Puerto Rico Tourism Company
John Doe and Richard Roe

DEFENDANTS

## OPINION AND ORDER

This adversary proceeding is before the court upon the motion to dismiss or for abstention filed by co-defendants Hon. Terestela González-Denton and the Puerto Rico Tourism Company. For the reasons set forth below, the court grants defendants' motion for abstention.

## Background

In October 1975 Hotel Coamo Springs Corp. ("Coamo Springs" or "Bankrupt") filed a bankruptcy petition under the provisions of the 1898 Bankruptcy Act (the "Act"), as amended, Case No. 75-00253 (ESL).[1] The bankruptcy case is currently before this court and is the only Act case pending in this district. Edgardo Muñoz is the trustee for, and on behalf of the Bankrupt (unless

---

[1] This proceeding stems from an old bankruptcy case which was filed prior to October 1, 1979, and is governed by the terms of the now-repealed Bankruptcy Act of 1898. *In re Miracle Enterprises, Inc.* 57 B.R. 133, 135 (D.R.I. 1986). The Bankruptcy Reform Act of 1978 had a general effective date of October 1, 1979. To the extent that the current bankruptcy law and terminology developed under the new Bankruptcy Code are not a departure from the old Act, but rather a codification of, the pre-Code case law, such new Code law and terminology is applicable to this case. *Id.*

separately named, Bankrupt and trustee will be jointly referred to as "Plaintiff"), filed the verified complaint commencing this adversary proceeding on November 6, 2006. (Dkt. 1).[2] Plaintiff subsequently filed an amended complaint on June 26, 2007 (Dkt. 31) (the "Complaint"). The defendants include the Hon. Terestela González-Denton ("González-Denton") as the Executive Director of the Puerto Rico Tourism Company, along with the Puerto Rican Tourism Company (the "Company") and certain unnamed parties identified in the complaint as defendants "John Doe" and "Richard Roe" (the "Unknown Defendants"). Only defendants González-Denton and the Company have appeared in these proceedings (jointly referred to as the "Tourism Defendants").

Plaintiff's complaint seeks relief pursuant to the Bankruptcy Act, 11 U.S.C. §§ 2a(15), 70a(5) and 70a(6); the current Bankruptcy Code ("BAP/CPA") 11 U.S.C. § 541, and Commonwealth of Puerto Rico (the "Commonwealth") Law 375 of May 14, 1949. Plaintiff asks the court to: 1) enjoin Tourism Defendants from selling or otherwise disposing of the subject property; 2) order the Tourism Defendants to revert title to the subject property back to Plaintiff "as provided for by law" and to compel them to refrain from selling or negotiating any other form of disposition of the subject property to, or in favor of, third parties, and; 3) enjoin the Unknown Defendants from purchasing or acquiring any right, recordable or otherwise, from the Tourism Company, "with the participation and consent of Bankrupt-plaintiff." (Dkt. 31 at 6-7).

The Tourism Defendants filed a motion to dismiss the original complaint for failure to state a claim on February 20, 2007. (Dkt. 9). After the amended complaint was filed, the Tourism Defendants renewed their motion to dismiss the complaint on October 16, 2007 (Dkt. 42) pursuant to Fed.R.Civ.P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Alternatively, Tourism Defendants this court to abstain from deciding the instant matter pursuant

---

[2] References to papers and pleadings filed in the docket of this case shall be referred to as "Dkt. __".

to 28 U.S.C. §1334(c) (Abstention). Defendants argue that the instant claims "can and should be addressed by the [Puerto Rico] State court," (Dkt. 42 at 6), based on their contention that this case involves questions of eminent domain under the laws of the Commonwealth which would not be before this court absent the underlying bankruptcy proceeding of the Bankrupt. (Dkt. 42 at 5-7).

A review of the litigious history between the parties will lead to a better understanding of the court's decision to abstain.[3] For over thirty years the parties (and their predecessors, successors and/or related parties in interest) have been embroiled in litigation concerning the subject property, its value, and the appropriate amount of money due Plaintiff as just compensation for the taking of the property. There are at least six reported decisions from the Commonwealth of Puerto Rico and the United States District Court for the District of Puerto Rico that shed light or have some bearing on the controversy presently before the court. These decisions have not been referenced by the parties during the instant proceedings.

**Facts**

The parties have engaged in a thirty year legal dispute as to the true nature of Plaintiff's rights surrounding the real property known as Los Baños de Coamo. The following facts can be gleaned from the pleadings and from the litigious history between the parties.

1. The subject property in this proceeding involves two parcels of approximately12.72 cuerdas ("Parcel A") and 11.68 cuerdas ("Parcel B"), located in the area known as the Baños de Coamo, in the municipality of Coamo, Puerto Rico. (the "Property")

2. The subject property was expropriated by the Commonwealth through its powers of eminent domain by petition filed in the Superior Court of Puerto Rico, Expropriations Section, on or about August 8, 1975. Case No. E-75-826. That proceeding is currently open and pending before

---

[3] Based on our decision to grant the Tourism Defendants' motion for abstention, we will not pass upon the standards under Fed.R.Civ.P. 12(b)(6), providing a defense for "failure to state a claim upon which relief can be granted", applicable to these proceedings pursuant Fed. R. Bankr. P. 7012(b).

said court.

3. As a result of the eminent domain proceedings filed in August 1975, the Tourism Company obtained ownership title to the property and is currently the record owner of the property.

4. Plaintiff filed for bankruptcy in October 1975 (Case # 75-00253 (ESL)).

5. In 1976, the Tourism Company transferred the subject property to a third party named "Umpierre" pursuant to an operating agreement and 15 year option to purchase. (*See Coamo Springs Gulf & Tennis Club, Inc. v. Compania de Turismo et al.*, 99 TCA 236 (P.R.App. 1999); and *Compania de Turismo et al. v. Coamo Springs Gold & Tennis Club, Inc., et al.*, 2000 TCA 1884 (P.R.App. 2000).

6. Umpierre exercised his option to purchase the subject property from the Commonwealth. However, the parties went to litigation over the terms of the purchase agreement. In 1995, after settling their disputes, the Tourism Company and Umpierre closed on the purchase of the subject property. *Id.*

7. Plaintiff successfully litigated to declare the 1995 Umpierre purchase agreement null and void. The purchase agreement was invalidated by decision of an appellate court of the Commonwealth dated November 22, 2000 (*See* 2000 TCA 1884, point 5, *supra*); the invalidation was reiterated by unpublished decision of the Supreme Court of the Commonwealth in Case No. 1999-345, dated December 12, 2001.

8. Plaintiff contends, and Tourism Defendants do not reply or seriously dispute, that in or about June 2006, the Tourism Defendants announced the sale of the property in the public media without prior notice to Plaintiff.

9. Plaintiff's claims over the property are based upon statutory property rights created under the eminent domain laws of the Commonwealth.

- 4 -

10. Plaintiff (Bankrupt) successfully asserted rights to just compensation in the Commonwealth courts for the value of the hot sulfurous springs located in the property. The issue was finally and firmly adjudicated in favor of Plaintiff by decision and order of the Supreme Court of the Commonwealth; appraisals of the hot springs are currently underway. (*See Commonwealth v. Hotel Coamo Springs Corp, et. al*, 138 PRR 37 (1995) (translated in 138 P. R. Offic. Trans ___, March 3, 1995 (No.CP-91-699)).

11. Throughout the litigation arising from the eminent domain proceedings filed against Bankrupt by the Commonwealth, Bankrupt managed to increase the just compensation award for the property from just over $195 thousand dollars initially granted by the Commonwealth, to over $300 thousand dollars in 1989, *excluding* the value of the thermal springs which is currently under appraisal. (138 PRR 37; translated in 138 P. R. Offic. Trans ___, March 3, 1995 (No. CP-91-699)).

## Summary of Decisions by the Commonwealth of Puerto Rico Courts

In May 1973, the Puerto Rico Legislature authorized the Commonwealth of Puerto Rico to expropriate the subject property through condemnation pursuant to the Commonwealth's power of eminent domain. The condemnation proceeding against Bankrupt was filed in August 1975. Since that moment, Bankrupt has been litigating before the Commonwealth courts for just compensation for the value of the property taken from Bankrupt. Three published decisions by the Commonwealth of Puerto Rico courts concerning these parties and Bankrupt's eminent domain proceedings reference numerous other legal and administrative proceedings involving these and related parties and claims. *See, e.g., E.L.A. v. Hotel Coamo Springs, Co. et al.*, 138 PRR 37 (1995) ("*ELA v. Coamo*") (holding that Bankrupt was entitled to expert valuation of the fair value of the hot sulfurous springs in its property taken by the Commonwealth, and ordering a determination of said value and just compensation for it.); *Coamo Springs Gulf & Tennis Club, Inc. v. Compania de Turismo et al.*, 99

CTA 236 (P.R.App. 1999) ("*Coamo v. Turismo*") (denying injunction against the Commonwealth to refrain from selling or entering into any other transaction regarding the subject property); and *Compania de Turismo et al. v. Coamo Springs Gold & Tennis Club, Inc., et al.*, 2000 CTA 1884 (P.R.App. 2000) ("*Turismo v. Coamo*") (order revoking and nullifying certain procedures that facilitated the sale and planned use of the subject property by the purchaser, Umpierre). The ruling in *Turismo v. Coamo* was reiterated by the Supreme Court of Puerto Rico in a separate proceeding in an unpublished decision dated December 12, 2001. (Finding 7, *supra*).

In *ELA v. Coamo, supra*, 138 PRR 37, a divided P.R. Supreme Court (Justice Fuster Berlingeri) remanded the case for further valuation proceedings of the thermal springs found in the property expropriated from Bankrupt. The concurring/dissenting opinion by Justice Negrón García finds that the decision to remand for further valuation proceedings and compensation to Bankrupt was correct because Bankrupt's case is "a peculiar and unique case on the subject of eminent domain, we cannot act with the same rigor as we do in conventional and frequent cases. [...] It would not be fair to punish [Coamo Springs] under these circumstances." *Id*. at 49.

In *Coamo v. Turismo, supra,* 99 CTA 236, related parties to the Bankrupt sued to enjoin consummation of the sale of all or part of the subject property to Umpierre. The appellate court affirmed a lower court decision holding, among other things, that plaintiffs in that action had incurred laches and unreasonable delay in bringing their suit to annul the purchase agreement between the Company and Umpierre. The original date of that purchase agreement apparently related back to an option to purchase given to Umpierre in 1976, which was finally exercised (after litigation with the Company) in 1995. The appellate court found that the subject property continued to have a public use and purpose, despite the sale, because the restrictions and conditions of use in the purchase agreement guaranteed the continued public purpose of the property. Plaintiffs in that case pleaded their property

rights under Law 12 of December 10, 1975—the applicability of which is the cornerstone of the Tourism Defendants' argument in this case. This position contrasts with the one taken by Plaintiff in this case, who argues that the applicable law is Law 375 of May 14, 1949, and not law 12 of December 10, 1975.

In *Turismo v. Coamo, supra*, 2000 TCA 1884, the appellate court reversed an administrative order by the Commonwealth Planning Board (the "Planning Board") which effectively sought to "formalize" the purchase agreement between the Company and Umpierre, and grant Umpierre recordable deeds of title to the property. The appellate court this time nullified the administrative process that led to the confirmation in 1999 of the purchase agreement, and the deeds of title to Umpierre. The appellate court found that the procedure used by the Planning Board violated applicable law and its own zoning rules, guidelines and procedures; that the Company and the Planning Board "lightly" disposed of the issues involved in the purchase agreement and related zoning decisions when they sought to "formalize" the purchase agreement and transfer of title to Umpierre; and that the property subject to the purchase agreement was of paramount importance to "our country and our national patrimony" and could not be disposed of in such confusing and unclear manner. *Id.* at 18.

### Summary of Decisions in the U.S. District Court for the District of Puerto Rico

As a result of the May 1973 legislative enactment authorizing the taking of the subject property, in May 1974 Bankrupt filed a civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985 in the federal court in Puerto Rico. *See, Hotel Coamo Springs, Inc. v. Hernandez Colon et al.*, 426 F.Supp. 644 (D.P.R. 1976) (Toledo, Chief Judge) ("*Coamo I*") (holding that the legislative act authorizing the taking of Bankrupt's property violated due process). The *Coamo I* ruling was stayed pending appeals and reconsideration. *Id.* at 673-675. In 1982, the federal court issued a new ruling

-7-

reconsidering the *Coamo I* order in light of new evidence of just compensation and due process. *See, Hotel Coamo Springs, Inc., v. Hernandez Colon*, 539 F.Supp. 1008 (D.P.R. 1982) ("*Coamo II*") (Cerezo, Judge) (dismissing the civil rights complaint). *Coamo II* held that any damages due to condemnation "are all part of the assessment of the damages being considered by the Superior Court of San Juan... Plaintiff has a meaningful remedy in the Commonwealth court [since a]ll the damage claims are causally related to the very fact of condemnation and the alleged loss of "vested rights" on account thereof..." *Id.* at 1018-19.

In *Coamo I, supra*, 426 F.Supp. 664, the Bankrupt successfully brought a civil rights action against the Commonwealth, claiming a violation of its right to due process and just compensation. *Id.* at 667. Bankrupt's basic claim was that the taking of the 25 cuerdas (the subject property in this case) effectively "froze" Bankrupt's proposed development of the entire tract, and substantially diminished the value of the remainder of Bankrupt's property without just compensation. The Commonwealth moved to dismiss the complaint based on abstention. The court denied the Commonwealth's motion after finding that the 1973 legislative act authorizing the taking of Bankrupt's property was "clear on its face", thus not requiring interpretation by the state courts. Id. at 668. The *Coamo I* court found that the act was unconstitutional, but withheld ruling on any damages until any appeals were completed. *Id.* at 675.

In *Coamo II, supra*, 539 F.Supp. 1008, the federal court reconsidered and reversed the ruling in *Coamo I* in light of new evidence filed by the Commonwealth. *Coamo II* treated Bankrupt's opposition to reconsideration as an action for declaratory judgment on the constitutional issue and for damages under 42 U.S.C. § 1983 through inverse condemnation. *Id.* at 1016. The "new evidence" was not completely unknown to the *Coamo I* court. But this time around it was properly briefed and developed before the *Coamo II* court, showing that there was an ongoing eminent domain proceeding

started against Bankrupt in 1975; that Bankrupt had accepted the basic allegations of the eminent domain complaint; that Bankrupt had properly objected to the valuation of the property and sought compensation for the value of the thermal springs; and that Bankrupt had withdrawn most of the funds consigned by the state as compensation for the subject property. *Id.* at 1013. The *Coamo II* court reversed the *Coamo I* decision in light of the new evidence and dismissed the complaint. In support of its ruling, the court found that the state court hearing the eminent domain proceeding was adequately assessing all of Bankrupt's claims for damages and compensation. *Id.* at 1019. Furthermore, the *Coamo II* court specifically held that "Plaintiff has a meaningful remedy in the Commonwealth court…" given that the Bankrupt's damage claims and alleged loss of vested rights "was causally related to the very fact of the condemnation itself…" *Id.* We find that the facts and reasoning underlying the *Coamo II* decision are not that different today, particularly in light of the developments and decisions in the state court proceedings previously discussed, *supra*.

In 1988, Plaintiff, its principals, and related corporations filed an action in federal court almost identical to the instant proceeding. *See In re Interamericas Turnkey Development Co., Inc.*, 94 B.R. 9 (D.P.R. 1988). *Turnkey* was an action to remove the state eminent domain proceedings to federal court. The state condemnation proceeding had just begun the trial phase to determine the proper amount of just compensation due the Bankrupt. The case was filed by Bankrupt's principals and related corporations, who were also in bankruptcy and claimed standing as secured and/or judgment creditors of Bankrupt. *Id.* at 10-11. The *Turnkey* case and the instant controversy are intimately related and similar in many aspects. We will address the claims, arguments and legal theories in support of federal jurisdiction raised in this case that were heard and rejected in *Turnkey*.

In *Turnkey,* as in this case, plaintiffs based their complaint on, among other statutes, 28 U.S.C. § 157, core proceedings. At the time, as is the case today, the eminent domain case was in the process

of determining just compensation for Bankrupt. The court remanded the case to state court after deciding that "section 157 provides no basis for removal." *Id*. The court found section 157 inapplicable even though it recognized, as we do here, that an award to Bankrupt (if any) in the local case will affect the estate. The court held: "We cannot find that the definition of a core proceeding reaches far enough to encompass a State eminent domain proceeding instigated against the Hotel prior to the Hotel's filing for bankruptcy. [...] [T]he eminent domain action is an action particularly based on State law and only peripherally related to the bankruptcy[,] [therefore,] we find that the bankruptcy court is not the proper forum to hear the case..." *Id*. The court did not find "related matter" jurisdiction based on plaintiffs' theory, also asserted in this case, that the possibility of a future award constituted a legal or equitable interest of the estate under 11 U.S.C. § 541. The local case, which is the basis for Plaintiff's claims in this action, "did not 'arise under' Title 11, nor did it 'arise in' a case under that title." *Id*. at 11. The court concluded that the "asserted relatedness" was insufficient "to invoke the mantel of federal jurisdiction" and held, "this court lacks jurisdiction to consider a state court action involving a bankruptcy debtor that encompasses wholly matters of state law." *Id*. at 12. The instant matter involves state law claims arising in the context of the exact same eminent domain proceedings that precluded the jurisdiction of the *Turnkey* court. The court rejected other alleged basis for federal jurisdiction and remanded the case after concluding: "The eminent domain proceeding wholly revolves around matters of local law, and resolution would not involve any issues of bankruptcy law. [...] We are unable to ascertain any independent basis for an assertion of federal jurisdiction." *Id*. at 13.

### Discussion

Plaintiff contends that the motion to dismiss or abstention must be denied because it is premised on the incorrect statutory provision. Specifically, Plaintiff claims that Law 375 of May 14,

- 10 -

1949 ("Law 375")[4] is the law that controls its present claim, and not Law 12 of December 10, 1975. ("Law 12")[5]. (Dkt. 16 at 2-3). Plaintiff is essentially arguing that Law 375 merely requires a decision by the Commonwealth to alienate the property, in order to trigger Plaintiff's reversionary interest and repurchase rights. (Dkt. 14 at 3).

The Tourism Defendants' motion for abstention contends that Plaintiff's complaint must be dismissed pursuant to the provisions of Law 12 because a fundamental event triggering Plaintiff's rights has not occurred, to wit, the official declaration by the Commonwealth (or its duly authorized agencies) of the cessation of public utility or purpose in the subject property. Alternatively, Tourism Defendants argue that even if the complaint presents cognizable claims, they are based on property rights created under the eminent domain laws of the Commonwealth that should be adjudicated in proceedings currently pending before a state court of competent jurisdiction. (Dkt. 42 at 3-4).

The parties offer and plead competing legal theories and statutes in support of their interpretations regarding Plaintiff's rights. The issue revolves around whether, due to the Tourism Defendants alleged actions, Plaintiff's asserted rights are intangible and premature, as argued by Tourism Defendants, or vested and actionable, as claimed by Plaintiff. The resolution of this issue rests upon the occurrence or absence of an event disputed between the parties, that is, the alienation of the subject property with or without cessation of public purpose. However, at this juncture, it is undisputed that the Tourism Company holds title to the property.[6] The extent of Plaintiff's interest in the property is a matter that should be addressed and decided by the courts of the Commonwealth of Puerto Rico, as the issue is presently before the commonwealth courts. *See, Butner v. Unites States,*

---

[4]  Plaintiff alleged that the Constitution of the Commonwealth forbids the ex-post facto application of new laws to rights acquired under a previous law, and that the law cited by Tourism Defendants only applies to the Secretary of Transport and Public Works, and not to the Tourism Defendants or their actions. (Dkt. 30: Plaintiff's Reply to Second Motion to Quash Deposition).
[5] 28 L.P.R.A. §§ 31 et seq.
[6]  Given the court's decision to abstain, we will not address the controversy over which Commonwealth statutory section controls Plaintiff's claims of an interest in property.

- 11 -

440 U.S. 48, 55 (1979) (While federal law controls whether a Bankrupt's interest in property is part of the bankruptcy estate, state law determines whether a Bankrupt has an interest in property.); *accord, In re the Ground Round, Inc.*, 482 F.3d 15, 17 (1st Cir. 2007).

## Abstention

The history of related state and federal litigation between these parties spans a period of over thirty years. Admittedly, the state court eminent domain proceedings have not ended. Bankrupt's bankruptcy proceeding is open, pending determinations of just compensation by the Commonwealth court and payments to Plaintiff. The Tourism Defendants move for abstention pursuant to 28 USC § 1334(c). The federal courts have jurisdiction over bankruptcy cases pursuant 28 U.S.C. § 1334, which provides in subsection (a) that the district courts have original and exclusive jurisdiction over "cases under title 11" (such as the bankruptcy petition itself), and in subsection (b) that the district courts have original but not exclusive jurisdiction over "proceedings arising under title 11, or arising in or related to cases under title 11".

Section 1334(c) provides for permissive abstention under § 1334(c)(1) and mandatory abstention under § 1334(c)(2). The statute distinguishes between cases "arising under", "arising in" and "related to" proceedings under title 11. " 'Arising under' proceedings are those cases in which the cause of action is created by title 11." *In re Middlesex Power Equipment & Marine, Inc.*, 292 F.3d 61, 68 (1 Cir.2002). " 'Arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* (citation omitted). " 'Related to' proceedings are those which potentially have some effect on the bankruptcy estate, such as altering Bankrupt's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate." *Id.* (citations omitted).

- 12 -

The discretionary abstention provision of § 1334(c)(1) provides that the district court may abstain from hearing a particular proceeding "arising under title 11 or arising in or related to a case under title 11" if to do so would be "in the interest of justice, or in the interest of comity with State courts or respect for State law". *See Middlesex,* 292 F.3d at 69 (citation omitted). In *Middlesex,* the First Circuit Court of Appeals observed that "[t]he statute itself delineates 'three ... criteria to determine whether abstention is appropriate': the interests of justice, comity, and respect for state law." *Id.* (citation omitted). The court of appeals further stated that other circuits have considered certain factors in determining whether permissive (discretionary) abstention is appropriate, including the extent to which state law issues predominate over bankruptcy issues, the presence of a related proceeding commenced in state court, and the likelihood that the commencement of the bankruptcy proceeding involves forum shopping." *Id.*

It is undisputed that on petition date the Plaintiff did not have actual or constructive possession of the subject property, or title to it. Therefore, the court does not possess summary jurisdiction of the action. Furthermore, a finding that Plaintiff is, at a minimum, currently in possession of an actionable right to property is subject to a determination pursuant to the laws of the Commonwealth of Puerto Rico. Consequently, the dispute before the court could not have been brought in federal court absent its relatedness to Bankrupt's bankruptcy proceeding.

The resolution of the local eminent domain proceedings will likely have an effect on the bankruptcy estate. Proceedings which "arise in" and "arise under" title 11 together constitute the bankruptcy court's "core" jurisdiction. 28 U.S.C. § 157(b)(1); *Concerto Software, Inc. v. Vitaquest International, Inc.,* 290 B.R. 448, 452 (D.Maine 2003). Subsection (b)(2) of § 157 sets forth a non-exclusive list of core proceedings which include, as asserted by Plaintiff, matters concerning the administration of the estate (§ 157(b)(2)(A)), motions affecting the automatic stay (§ 157(b)(2)(G)),

- 13 -

and proceedings affecting the liquidation of assets of the estate or the adjustment of the Bankrupt-creditor or equity security holder relationships (§ 157(b)(2)(O)). (Dkt. 31 at 4). The mandatory abstention provision of § 1334(c)(2) applies to cases "related to" proceedings under title 11, and provides that the district court shall abstain from hearing a proceeding based upon a state law claim or state law cause of action, which is related to a case under title 11 but not arising under or arising in a case under title 11, if a state court action is pending and can be timely adjudicated.

Mandatory abstention under § 1334(c)(2) does not apply to the instant case related to Bankrupt's bankruptcy case filed in 1975. In that regard, "[s]ection 1334 was enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, on July 10, 1984, and said Act is generally applicable to cases and actions pending or filed after the enactment date. [...] (internal citations omitted). Section 122(b) of P.L. 98-353 instructs that section 1334(c)(2) "shall not apply with respect to cases under Title 11 of the United States Code that are pending on the date of enactment of this Act, or to proceedings arising in or related to such cases." *Turnkey, supra,* 94 B.R. at 13 (*citing* Bankruptcy Amendments and Federal Judgeship Act, Pub.L. No. 98-353, § 122(b), 1984 U.S.Code Cong. and Admin.News (98 Stat.) 333, 346.; *Matter of Global International Airways Corp.,* 70 B.R. 228, 232, n. 12 (W.D. MO. 1986); *Allen County Bank & Trust Co. v. Valvmatic International Corp.,* 51 B.R. 578, 583 (D.C. 1985)). Based on the foregoing, we conclude that mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply to this proceeding related to Bankrupt's bankruptcy case which was pending before the court on July 10, 1984.

In opposition to dismissal, Plaintiff points to (Act) 11 U.S.C. § 110 and (BAP/CPA) 11 U.S.C. § 541, in support of his contention that the asserted right of reversion is property of the estate which includes the legal and equitable interests of the Bankrupt in property as of the commencement of the case. (Dkt. 16 at 4; Dkt. 31 at 6). According to Plaintiff's allegations, the "trigger" of those

- 14 -

rights is why this court should intervene and enjoin the Tourism Defendants from selling the property without first offering it to Plaintiff.

The First Circuit Court of Appeals observed that the abstention doctrines are "concepts that reflect 'a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes'." *Cruz v. Melecio*, 204 F.3d 14, 23 (1st Cir. 2000) (citations omitted). The court found that abstention was "appropriate until the proceedings pending before the courts of the Commonwealth of Puerto Rico had 'run their course', including that the Commonwealth proceedings were filed first and have progressed further [and to avoid the 'discomfiting specter of forum shopping']." *Id.* at 24. Under the First Circuit's analysis, discretionary abstention is warranted in this case because, 1) Plaintiff's claims are based entirely on state law, 2) there is an open and ongoing state court (eminent domain) proceeding available to Plaintiff, and 3) Plaintiff's resort to this court in this case at this time can be viewed as forum shopping.

As we have previously noted in cases involving important issues of state law, "[a] court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the course of bankruptcy administration." *In re C.H. Properties*, 2006 WL 3909779 at *9 (Bankr. D.P.R. 2006) (slip op.) (citations omitted).

Plaintiff's claims of proprietary interests are similar to the ones previously presented and decided by the district court in *Turnkey*, wherein the court held that "[t]he permissive abstention statute, section 1334(c)(1), Title 28, United States Code, applies..." *Turnkey,* 94 B.R. at 13 (citations omitted). "Due to considerations of comity and in the interest of justice [and respect for local law],

- 15 -

we find that [Plaintiff's state law claims] is a particularly appropriate candidate for discretionary abstention. [...] The [controversy over the property rights raised in this proceeding] wholly revolves upon matters of local law, and resolution would not involve any issues of bankruptcy law." *Id.* Therefore, discretionary abstention in favor of the Commonwealth courts is appropriate.

### Conclusion

After thoroughly reviewing the record before the court and the history of this case, we reach conclusions similar to those reached by the *Coamo II* and *Turnkey* courts, and abstain. The ongoing state court proceedings giving rise to Plaintiff's claims remain available to Plaintiff. Moreover, we are bound by the *Turnkey* precedent not to assert jurisdiction over this matter.

For all the foregoing reasons and in the interest of judicial economy, in comity with the courts of the Commonwealth of Puerto Rico, this court will discretionarily abstain from hearing this action. The parties may pursue whatever remedies they deem appropriate before the courts of the Commonwealth of Puerto Rico.

The Clerk shall enter judgment accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of _____January_____, 2008.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge

- 16 -